Filed 8/20/21  In re A.C. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | B308470 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP02688A) |
| Plaintiff and Respondent, | |
| v. | |
| C.K., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee.  Affirmed.

Lori N. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother C.K. appeals the juvenile court's order awarding father sole legal custody of now nine-year-old A.C., arguing the court abused its discretion because it failed to consider A.C.'s best interests, and the evidence showed mother and father parented A.C. well together. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This family came to the attention of the Los Angeles Department of Children and Family Services (Department) in April 2019, following reports of a domestic violence incident between mother and father, and that mother was intoxicated. When police arrived, mother's face was swollen and bloody. All she would tell responding officers was that she had a fight with father, who had left the scene. A.C. was not present during the incident, and mother and father were no longer in a relationship.

Mother has a history of referrals to the Department, including a referral in June 2018 that mother and her boyfriend engaged in domestic violence in front of the children (mother has a younger child with a different father, who is not at issue in this appeal), and a referral later that month that mother's boyfriend had accidentally shot himself, and that he and mother were intoxicated and were not supervising the children. The referrals were closed as inconclusive. Mother's criminal history disclosed multiple arrests for driving under the influence, and disorderly conduct while intoxicated.

Father denied hurting mother, or having a history of domestic violence. Father's relationship with mother was amicable, and she allowed father to see A.C. whenever he wanted, even though they did not have a custody agreement. He was reluctant to pursue obtaining a custody order because he did not want to "upset" mother. He also admitted he did not want to argue with mother because he worried she would limit his access to A.C. A.C. lived with father and his wife from May 2018 until October 2018, because

2

mother was homeless. After he returned A.C. to mother, he had difficulty contacting mother to visit with A.C.

Father's wife denied any domestic violence, and wanted A.C. to live with her and father because they could provide her with more stability and a better school district. She believed father "always [tries] to make peace and not cause any problems with . . . mother regarding the custody or visitation . . . ." She would like father to get a custody order "because . . . mother sometimes does not allow him to visit [A.C.] and they love her."

Maternal grandmother, mother's adult daughter, mother's ex-boyfriend, and father all reported that mother drinks, and that they were concerned about her drinking. However, they also reported that mother did not neglect her children, and that the children were well cared for.

Mother admitted to drinking twice per week, but denied drinking around the children. Mother did not believe she had a drinking problem, although she was attending AA classes because maternal grandmother was concerned about her drinking.

On April 29, 2019, the Department filed a petition alleging the children were at risk of harm because of domestic violence between mother and father, and mother's alcohol abuse. A.C. was detained with maternal grandmother after mother failed to submit to drug testing and a substance abuse assessment, moved from her motel and became homeless without providing the Department with an address, and failed to return the Department's calls. The Department tracked down the family by visiting A.C.'s school, which reported that A.C. was habitually tardy.

After the children were detained, mother would not return the Department's calls. The Department eventually encountered mother while she was visiting the children at maternal grandmother's home. Mother told the social worker she enrolled in

New Hope Drug and Alcohol Treatment. She still denied having a drinking problem.

On June 25, 2019, the juvenile court sustained allegations under section 300, subdivision (b) as to mother's alcohol abuse and the domestic violence incident. The court ordered mother to participate in a full drug and alcohol program with aftercare, random testing, a 12-step program, domestic violence classes, parenting classes, and counseling, and also ordered father to participate in services.

According to the Department's December 2019 status report, A.C. had been diagnosed with type I diabetes, and had to be hospitalized. Mother, father, maternal grandmother, and A.C.'s adult sister all received medical training for how to care for her.

Mother was not complying with court orders, and was struggling with homelessness. She was terminated from her sober living program for returning with alcohol in her system. She was not testing for the Department, and had not enrolled in parenting or domestic violence classes. In November 2019, she reenrolled with New Hope to receive drug treatment services and counseling.

Father was complying with his case plan, and A.C. was released to him in December 2019. According to the Department's June 2020 status review report, father was providing excellent care for A.C., and was properly managing her diabetes. A.C. was happy and thriving, receiving "outstanding" grades at school, and receiving a student of the month award.

Mother completed her residential treatment program, and began having unmonitored visits with A.C. Mother's visits were going well, and father cooperated to ensure the visits occurred. However, she was still failing to test for the Department, testing only twice between November 2019 and May 2020, and missing 17 tests.

The Department's September 2020 interim review report noted that A.C. was still thriving in father's care, and was enjoying her visits with mother. Father sometimes had to help mother with A.C.'s diabetes sensor, which became dislodged during some of A.C.'s visits with mother. Father also provided mother with a video showing her how to reattach the sensor.

Mother was discharged from her aftercare program in June 2020, after returning home after curfew, and testing positive for alcohol. Mother lied to the Department about the reason she was terminated from the program, and instructed the program to not share information with the Department. Mother was a no show for 12 tests between May and August 2020, and tested positive for alcohol in July. Mother claimed she had enrolled in another program, but failed to provide proof of her participation. Mother admitted she drank a bottle of wine, resulting in her positive test, because she was stressed about work. She was suffering from anxiety and depression, and had a tendency to "shut down and not communicate." She enrolled in a new aftercare program in August 2020.

The court ordered that mother's visits could remain unmonitored if she submitted to testing and participated in her drug program. But the Department's October 2020 report noted that mother failed to drug test. Mother also was not attending required counseling sessions for her aftercare program. She was arrested in September 2020, and was not forthcoming about the circumstances of her arrest. Therefore, her visitation reverted to monitored.

At the October 26, 2020 review hearing, the Department continued to recommend closing the case with joint legal custody, and sole physical custody for father. Father asked that he be granted sole legal and physical custody, because he had concerns

about mother's use of alcohol, and believed she presented a risk to A.C.  The court terminated jurisdiction with a custody order, giving father sole legal and physical custody.  This timely appeal followed.

**DISCUSSION**

Mother contends the juvenile court abused its discretion by awarding sole legal custody to father.  The Department did not file a brief.  We are not persuaded by mother's contentions.

Welfare and Institutions Code section 362.4, subdivision (a) provides that "[i]f the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years . . . , the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."  " 'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3006.)  A parent's substance abuse is a relevant factor to consider when making custody determinations.  (Fam. Code, § 3011, subd. (a)(4).)  When making an exit order pursuant to Welfare and Institutions Code section 362.4, the standard that guides the juvenile court is the best interests of the child.  (*In re John W.* (1996) 41 Cal.App.4th 961, 973; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.)

"The juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case."  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.)  We review the juvenile court's order awarding father sole legal custody for abuse of discretion.  (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.)  A juvenile court abuses its discretion " ' " ' "by making an arbitrary, capricious or patently absurd determination." ' " ' [Citation.]" (*Ibid.*)

6

We find no abuse of discretion here. Mother's failure to submit to testing, relapse, poor participation in her programs, and lack of communication and cooperation with the Department fully support the juvenile court's implied finding that mother's participation in making important decisions about A.C.'s welfare would not be in A.C.'s best interest. Mother contends she and father were capable of successfully coparenting A.C. While we agree mother and father largely cooperated, the facts described above are sufficient to establish the court did not abuse its discretion in awarding sole physical and legal custody to father.

If circumstances change, mother may seek a change in custody in family court. (Welf. & Inst. Code, § 362.4; *In re Jennifer R., supra,* 14 Cal.App.4th at pp. 712, 714.)

## DISPOSITION

The order is affirmed.


                              GRIMES, Acting P. J.

WE CONCUR:


                              STRATTON, J.


                              OHTA, J.*


---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7